1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2
   ------------------------------------x
3  UNITED STATES OF AMERICA,

4
                           Case No. 19-cr-910(NSR)
5       -vs-
                           SENTENCING
6  GIOVANNI TASSONE,

7                       Defendant.

8  ------------------------------------x

9                           United States Courthouse
                            White Plains, New York
10
                            January 21, 2022
11                          12:03 p.m.

12
                  ** VIA TELECONFERENCE **
13
   B e f o r e:
14
                           HONORABLE NELSON S. ROMÁN
15
                           United States District Judge
16

17 A P P E A R A N C E S:

18 DAMIAN WILLIAMS
        United States Attorney for the
19      Southern District of New York
   QAIS GHAFARY
20      Assistant United States Attorney

21

   FEDERAL DEFENDERS OF NEW YORK, INC.
22 JASON I. SER
        Attorney for Defendant
23

24

25

1          THE DEPUTY CLERK:  Docket number 19-cr-910, United

2   States of America versus Giovanni Tassone.

3          Will counsel please state their appearance for the

4   record, beginning with the government?

5          MR. GHAFARY:  Good afternoon.  Qais Ghafary for the

6   government.

7          MR. SER:  Good afternoon.  Jason Ser, Federal

8   Defenders, for Mr. Tassone, who is present via telephone.

9          THE COURT:  Good afternoon, everyone.  This is Judge

10  Román.  This is a proceeding in the matter of United States of

11  America versus Giovanni Tassone, docket number 19-cr-910.  It is

12  intended to be the sentencing of the defendant.

13         And for the record, Mr. Tassone and his attorney,

14  along with the government, are appearing via telephone.

15         Pursuant to the Coronavirus Aid, Relief, and Economic

16  Security Act, videoconferencing and telephone conferencing may

17  be used in enumerated criminal proceedings delineated by

18  Standing Order M10-468, in certain circumstances during the

19  national emergency related to the Coronavirus Disease 2019.

20         Before the Court is one such criminal proceeding, a

21  felony sentencing under Rule 32 of the Federal Rules of Criminal

22  Procedure.  The Chief Judge of the United States District Court

23  for the Southern District of New York has found that felony

24  sentencings cannot be conducted in person without seriously

25  jeopardizing public health and safety, and thus video-

1  conferencing or telephone conferencing, if videoconferencing is

2  not reasonably available, may be used in such proceedings with

3  the consent of the defendant after consultation with counsel and

4  upon a finding by the presiding judge that the proceeding cannot

5  be further delayed without serious harm to the interests of

6  justice.

7          Given the current logistical and technological

8  constraints, the Court finds that a physical conference and

9  video teleconferencing are not reasonably available for this

10 proceeding, and this sentencing will be conducted

11 telephonically.

12         All right.  Mr. Tassone, I am going to ask you several

13 questions for the record that do not pertain to any of the

14 criminal charges.  All right.  However, I need to make a

15 complete record.

16         Can you please state your full name and your age?

17         THE DEFENDANT:  It's Giovanni Tassone, and my age is

18 50 years old.

19         THE COURT:  Do you have any difficulty reading,

20 writing, speaking or understanding the English language?

21         THE DEFENDANT:  No, Your Honor.

22         THE COURT:  How far did you go in your school, as far

23 as schooling, rather?

24         THE DEFENDANT:  High school diploma, Your Honor.

25         THE COURT:  All right.  Have you ever been

1  hospitalized or treated for narcotic or alcohol addiction?

2          THE DEFENDANT:  No, Your Honor.

3          THE COURT:  Have you taken or used any drugs,

4  marijuana or alcohol within the last 24 hours?

5          THE DEFENDANT:  No, Your Honor.

6          THE COURT:  Do you suffer from any physical or mental

7  problems which prevents you from fully understanding today's

8  proceedings?

9          THE DEFENDANT:  No, Your Honor.

10          THE COURT:  All right.  Mr. Ser, did you file a

11  consent form on behalf of your client?

12          MR. SER:  Yes, Your Honor.  I filed two consent forms.

13  They were provided to your clerk.

14          THE COURT:  All right.  Thank you.  All right.  Just

15  give me a moment.  Just going off the record for a second.

16          (Pause)

17          THE COURT:  Let's go back on the record.

18          All right.  Mr. Ser, did you consult with your client

19  about his right to appear physically before the Court in this

20  matter?

21          MR. SER:  I did, Your Honor, yes.

22          THE COURT:  And did you consult with your client about

23  any potential waiver of his right to physically appear in this

24  matter?

25          MR. SER:  I did.  Yes, Your Honor.

1          THE COURT:  Are you satisfied that your client has

2    knowingly, intentionally, and voluntarily waived his right to

3    physically appear before the Court for the purposes of this

4    sentencing proceeding?

5          MR. SER:  I am satisfied.

6          THE COURT:  All right.  Did you also consult with your

7    client about this proceeding taking place telephonically with

8    all participants appearing telephonically?

9          MR. SER:  Yes, Your Honor.

10          THE COURT:  And after such consultation, is it your

11    understanding that your client has knowingly, intentionally, and

12    voluntarily waived his right to physically appear before the

13    Court?

14          MR. SER:  That is my understanding.  Yes, Your Honor.

15          THE COURT:  All right.  And is it also your

16    understanding that he has knowingly, intentionally, and

17    voluntarily consented to proceed telephonically with this

18    proceeding?

19          MR. SER:  That is my understanding.  Yes, Your Honor.

20          THE COURT:  All right.  Mr. Tassone, it's my

21    understanding that you have consulted with your attorney, and

22    after doing so, that you have consented to waive your physical

23    appearance for today's proceeding; is that correct?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  After such consultation with your

1 attorney, do you now knowingly, intentionally, and voluntarily

2 waive your right to physically appear before the Court at

3 today's proceeding?

4         THE DEFENDANT: Yes, Your Honor.

5         THE COURT: All right. Mr. Tassone, it's my

6 understanding also that you were informed that this proceeding

7 would take place telephonically; is that correct?

8         THE DEFENDANT: Yes, Your Honor.

9         THE COURT: And that you consented to proceed

10 telephonically; is that correct?

11         THE DEFENDANT: Yes, Your Honor.

12         THE COURT: After consulting with your attorney, do

13 you now knowingly, intentionally, and voluntarily consent to

14 proceed telephonically at today's proceeding?

15         THE DEFENDANT: Yes, Your Honor.

16         THE COURT: All right. Did you also authorize your

17 attorney, Mr. Ser, to file a consent form on your behalf wherein

18 you --

19         THE DEFENDANT: Yes.

20         THE COURT: -- waive your physical appearance and

21 agree to proceed telephonically at today's proceedings?

22         THE DEFENDANT: Yes, Your Honor.

23         THE COURT: All right. The Court finds that the

24 defendant, Giovanni Tassone, has knowingly, intentionally, and

25 voluntarily waived his physical appearance and has consented to

1  proceed telephonically at today's proceeding.

2          All right.  Does any party wish to make any statement

3  as to why this proceeding cannot be further delayed without

4  serious harm to the interests of justice?

5          MR. SER:  Not from the defense, Your Honor.

6          MR. GHAFARY:  Nor from the government.  Thank you.

7          THE COURT:  All right.  In light of the facts before

8  the Court, including the ongoing national emergency arising from

9  the Covid-19 pandemic, its continuing impact on the functioning

10 of the federal courts, the increasing necessity for judges in

11 this District to conduct criminal proceedings remotely in order

12 to comply with social distancing protocols, and the need to

13 resolve this matter as expeditiously as possible, the Court

14 finds that the sentencing in this matter cannot be further

15 delayed without serious harm to the interests of justice.

16         All right.  I have reviewed the presentence

17 investigation report prepared on April 3rd, 2020 and revised May

18 4th, 2020.  I believe it's on the docket at ECF Number 29, which

19 was prepared in connection with today's sentencing of

20 Mr. Tassone; the government's submission dated January 14, 2022,

21 ECF Number 40; and the defendant's submission dated January 10,

22 2022, ECF Number 41, and I believe there was a supplemental

23 submission dated January 19, 2022, docketed on ECF Number 42.

24         All right.  Has the government reviewed the

25 presentence report?

1          MR. GHAFARY:  Yes, Your Honor.

2          THE COURT:  And does the government have any

3  objections to the presentence report?

4          MR. GHAFARY:  No, Your Honor.

5          THE COURT:  All right.  Thank you, counsel.

6          Mr. Ser, have you had an opportunity to review the

7  presentence report?

8          MR. SER:  Yes, Your Honor.

9          THE COURT:  And have you had an opportunity to discuss

10  it with your client, Mr. Tassone?

11          MR. SER:  Yes, Your Honor.

12          THE COURT:  Do you have any objections to the report

13  that you wish to raise on behalf of your client at this time?

14          MR. SER:  Not at this time, Your Honor.

15          THE COURT:  All right.  Mr. Tassone, have you had an

16  opportunity to read and review the presentence report?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  And did you discuss it with your attorney?

19          THE DEFENDANT:  I did, Your Honor.  Yes.

20          THE COURT:  All right.  And did you raise any and all

21  objections which you wished him to raise at this sentencing?

22          THE DEFENDANT:  No, Your Honor.

23          THE COURT:  All right.  Meaning there were no

24  objections that you wished to have him correct here; is that

25  correct?

1              THE DEFENDANT:  Yes, Your Honor.

2              THE COURT:  All right.  Mr. Tassone, the Felony

3    Information charges you with one count of possession of child

4    pornography in violation of Title 18 United States Code Section

5    2252A(a)(5)(B), and (b)(2).

6              The defendant waived indictment at his arraignment on

7    December 18, 2029 -- I am sorry -- December 18, 2019, before

8    Magistrate Judge Smith, that's ECF Number 24, and entered a

9    guilty plea to the sole count of the Information.

10             All right.  Does the government have any comments or

11   motions for the Court's consideration before I impose a sentence

12   upon the defendant?

13             MR. GHAFARY:  No, Your Honor.  Thank you.

14             THE COURT:  You don't have any motions or comments you

15   would like to make on behalf of the government with respect to

16   sentencing?

17             MR. GHAFARY:  Your Honor, with respect to sentencing,

18   we would just state -- rest on our briefs and state that we

19   believe that a substantial sentence of incarceration below the

20   guidelines range is appropriate for the reasons set forth in the

21   sentencing submission.

22             THE COURT:  Okay.  And, Mr. Ser, do you have any

23   comments about -- that you would like to make in support of your

24   client with regards to sentencing in this matter?

25             MR. SER:  Yes, please, Your Honor.

1          The sentencing letter I've submitted -- I apologize

2    for its length -- but it's extremely detailed, and fortunately

3    in this case Mr. Tassone's equities were such that a letter like

4    that was necessary, and so I will highlight just a couple of

5    things about his background.  And Mr. Tassone is an individual

6    who appears before the Court for the first time in his entire

7    life having been arrested and convicted in this case.  Prior to

8    this case, he had no criminal history whatsoever, not even an

9    arrest.

10          He was employed; maintained employment and had

11   prolonged tenures of employment.  He is a hard worker.  In fact,

12   that hard work earned him an offer that remains pending and

13   outstanding.  He works irrigation full time, but seasonally,

14   which means during the colder winter months he is on hiatus --

15   not laid off, just on hiatus -- because he's returned to the

16   same company several times over the last several years, but he

17   now has an offer from another irrigation company owned by an

18   individual who is actually his landlord, offered him full-time

19   job -- a full-time job in the irrigation industry but all year

20   round, and that was a result of his reputation and hard work,

21   and it definitely demonstrates that he's someone who will put

22   his mind to something and do well.

23          Mr. Tassone also has some family and community support

24   as indicated in my letter.

25          Now, the conduct at issue has been discussed in great

1  detail in my letter.  The government has gone into it as well.

2  But there's two things I want to highlight:  One, this isn't a

3  case involving any production or contact with minors whatsoever,

4  and the one, perhaps the most aggravating feature in the case,

5  is some of the content of the child pornography.  The government

6  represents that there was content that involved infants or

7  toddlers.  But what I want to point out is those were not sought

8  out actively by Mr. Tassone.  That was not the majority by any

9  means of the child pornography found on his computer.

10         In fact, post arrest when he made statements, he

11  identified certain search terms he would use along the lines of

12  "young" and "teen," but not "infant" or "toddler."  These were

13  things that were the result of what I referred to as blind

14  downloads.  When you do a search and you get a response with

15  files, many of the files are not indicative of what the content

16  is, and that was the issue in this case in part.

17         The content at times had alphanumeric and symbols in

18  the names rather than any description that would have told

19  Mr. Tassone that it was an infant or a toddler at issue.  That

20  was not what he sought.  That is not what he wanted, and in

21  fact, probably did not view many of the files he had downloaded,

22  though he viewed some.

23         But I wanted to make clear that he was not actively

24  seeking out this sort of content.  Testing suggested attractions

25  to teenage females.  So this is a very different case in many

1  respects, and I think the biggest respect is the fact that we

2  have deleted images and videos that were located on the

3  computer, and I have explained in my letter why that's

4  significant.  It is inconsistent with someone who is a hardcore

5  collector, someone who is extremely into the nature of what they

6  are downloading, and being a hoarder -- excuse me -- to some

7  degree.

8          The Court ordered an independent psychosexual

9  evaluation, which was in addition to the psychosexual evaluation

10 the defense expert conducted, and the defense expert is actually

11 Richard Krueger, who is also an expert that has done court-

12 appointed evaluations in the past; and both of the findings --

13 both experts made findings that were very, very important.  Dr.

14 Krueger determined, after normative testing, that Mr. Tassone

15 posed a low or extremely low risk of recidivating.  The court-

16 appointed expert concluded similarly, and said Mr. Tassone posed

17 a low overall risk of recidivism.  And so we have someone here

18 whose recidivism risk couldn't be any better as a result of the

19 testing that was administered.

20         And there is actually one comment by Mr. Lau, who is

21 obviously the court-appointed expert in the case.  According to

22 the report from Empire Forensics, Mr. Lau and his staff, who

23 were evaluators, actually stated that given Mr. Tassone's

24 history of compliance with his community supervision, he likely

25 will continue to comply with supervision and remain offense-free

1  in the future, and I think that's significant because when you

2  look at who knows Mr. Tassone best, second to me, I would submit

3  it's Mr. Lau and his counseling staff, and I will get into that

4  in a few moments.

5          He's been on supervision now for three years.  He has

6  not had a single incident.  He has been in perfect compliance

7  with all conditions, which is not common.  And part of those

8  conditions that required him to attend and participate in sex-

9  offender-specific counseling, and he has been involved in both

10 one-on-one and group counseling with Empire Forensics for a

11 majority, nearly all of his time on supervision.  I believe he

12 began one-on-one in July of 2019 after Mr. Lau did an initial

13 psychosexual evaluation, and on his own merit and his own

14 request, Mr. Tassone sought out additional counseling options;

15 and as Mr. Lau confirmed in the report, Mr. Tassone asked if he

16 could participate in group treatment, which is significant.

17         The feedback from the providers identifies a man who

18 wants treatment, who is taking advantage of that treatment, and

19 who has been proactive with regard to his treatment.  As I

20 indicated, he sought out the group, but he is also very

21 proactive in the sense that he is a very vocal participant in

22 his one-on-one and group sessions, and that's apparent from the

23 comments by the treatment providers who had that contact with

24 him in the context of treatment.

25         And his progress has been nothing short of

1  significant, and this lends itself to what I mentioned earlier;

2  that the court-appointed expert, who is also the pretrial

3  treatment provider, says that Mr. Tassone likely will comply

4  with supervision and will remain offense-free in the future.

5  Mr. Lau and his staff know him better than anybody else.  They

6  are the specialists treating him for the issues he suffers from,

7  and their opinion should be significant.

8          And it's not common.  I see enough of these cases

9  where that isn't always said.  There are aggravating features or

10  factors that were nonexistent in this case that likely lent

11  itself, coupled with Mr. Tassone's performance during

12  supervision, and in treatment that Mr. Lau relied on in arriving

13  at those conclusions, but those conclusions are supremely

14  important, especially given the nature of the 3553(a) factors

15  that the Court has to consider.

16          I would submit that given the length of treatment and

17  time on supervision, coupled with how he has approached it and

18  participated in it, that his time on pretrial release in

19  treatment is a form of extraordinary acceptance.  It's not

20  something we see all the time.  In part, it's a by-product of

21  the adjournments that were prompted by the Covid pandemic, but

22  nonetheless, he has been an active and positive participant for

23  several years now in treatment, and I think it's truly

24  demonstrative of his sincere efforts to rehabilitate.  Mr. Lau's

25  letter certainly supports that characterization.

 1          And the sentence we are seeking here would allow

 2  Mr. Tassone to continue with his treatment uninterrupted so that

 3  he can continue in a positive trajectory.

 4          And I think avoiding an interruption in treatment is

 5  crucial in cases.  I have had many, many clients who had

 6  previous sex offender convictions who were in treatment, and

 7  then treatment was either interrupted, changed, modified,

 8  something happened that it was inconsistent in some regards, and

 9  too frequently I have seen an individual who had been doing well

10  not do so well.  So I do think continuity of treatment cannot be

11  overstated here, and certainly Mr. Lau in both the report that

12  was submitted to the Court and the supplemental letter, they

13  don't state that incarceration is needed here for any form of

14  treatment or to protect the public.  Mr. Lau certainly seems to

15  indicate that continuing treatment here would benefit

16  Mr. Tassone and the public, arguably, most effectively.

17          And I don't want the Court to think that by asking for

18  time served that we are asking for the Court to give Mr. Tassone

19  a walk, and I emphasize this in a lot of my cases.  The Supreme

20  Court has made clear that even a probationary term, which is the

21  same as supervised release, frankly, is a form of punishment.  I

22  have that in my letter to the Court.  It's not leniency.  It's a

23  sanction.  The conditions restrict an individual's liberty.

24          And if the Court were to grant time served, there is a

25  minimum supervision requirement of five years.  The Court could

1  even go higher, but assuming the Court were to give Mr. Tassone

2  a five-year term of supervised release, that could mean for a

3  total of eight full years Mr. Tassone will have been under the

4  supervision of this Court and answerable to this Court, and

5  eight years is not a short period of time.  Cases certainly have

6  proceeded faster.  The Covid pandemic, obviously, interfered to

7  some degree with that in this case, but eight years of being

8  susceptible to the Court's ability to sanction, put him in

9  custody, impose some sort of sentence for any violation of a

10  supervised release term, is a form of punishment and is

11  something that Mr. Tassone has never even experienced.

12          He has no criminal history, as I mentioned.  So being

13  under this form of supervision has been eye-opening to him.  It

14  has been immensely -- I don't want to say difficult because he's

15  excelled and done very well -- but it has not been easy, right?

16  It's challenging for individuals who have never experienced it

17  before.  And fortunately, Mr. Tassone has done extremely well,

18  and he's taken advantage of all of the opportunities afforded to

19  him through the course of his pretrial release, including his

20  mental health treatment.

21          So with a five-year term of supervised release, the

22  Court will have another five years to monitor Mr. Tassone

23  through probation, and should Mr. Tassone have issues, violate,

24  the Court can send him to custody, but a five-year term of

25  supervised release, coupled with the three he's already done, is

1  a very, very long sentence in this case.

2         And this is even before the collateral consequences of

3  his conviction coming to play, and that would include his

4  registration.  He will have to be an individual who registers.

5  The state court will obviously determine what tier he is being

6  placed in, but at minimum it's a 20-year term of registration on

7  a yearly basis, and that's a further check on his liberty as

8  well because he will also be supervised to some degree by state

9  sex offender specialists.

10         So finally, the Court has to consider protecting the

11 public, and I want to go back and stress Mr. Lau's comments and

12 conclusions in this case.  Mr. Tassone's proven for three years

13 now he can remain law abiding.  Continuing treatment will only

14 improve and increase that likelihood, and this is one of those

15 rare cases where equities and performance on pretrial release

16 strongly support a non-jail sentence in this case.

17         And I have cited a lot of statistics in my sentencing

18 letter, but in a case where an individual pleads guilty to the

19 possession of child pornography, the guidelines start extremely

20 high, and the Court obviously under Second Circuit precedent

21 like *Dorvee* can find that those guidelines lack an empirical

22 basis.  They lack a legitimate foundation in study.  Certainly

23 they have not been amended over time.  And that's why the

24 statistical evidence I presented to the Court -- though some of

25 it isn't too recent -- it's still applicable.  Why?  Because the

1   guidelines haven't changed, and one of the Sentencing

2   Commission's obligations is to respond to court feedback even in

3   the form of sentences that obviously would reveal departures and

4   variances, but an overwhelming and vast majority of judges

5   believe the guidelines are so out of tune for possession cases.

6          And so the Court is starting at a high guideline range

7   here, and obviously Probation is recommending two years, but we

8   do believe that the sentence we are requesting here, time served

9   with an additional term of supervised release with conditions

10  that include mental health treatment and sex offender treatment,

11  are sufficient, but not greater than necessary, and are

12  consistent with the facts of the case and Mr. Tassone's proven

13  performance to date.

14         And then the last thing I want to end on is obviously

15  sending him into custody creates risks, one of which is, by

16  virtue of the nature of the case, sex offenders, obviously, are

17  not always able to do time very easily or without incident, and

18  this case is no exception.  But couple that with Covid, putting

19  someone into custody now with the Covid pandemic, we have had

20  numerous fluctuations.  We have had numerous resurgences.  The

21  Omicron variant is now out.  Who knows what lays ahead, but we

22  know by virtue of having to do this conference by telephone,

23  that Covid continues to affect the inmate population, and it

24  certainly can't be said that any of that is positive.  It's

25  almost always negative, detrimental with a risk of very severe

1  health consequences.  So that also militates in favor of what we

2  are seeking here.

3          So unless Your Honor has any additional questions, I

4  will submit on the remainder of my written sentencing letter.

5          THE COURT:  I don't -- well, I do.  And the question

6  is with respect to a period of supervised release, what

7  mechanics would be in place with respect to preventing your

8  client from continuing to engage in, you know, viewing or

9  downloading the materials he is accused of -- basically admitted

10 to possessing?

11         MR. SER:  Right.  I think there are at least three, if

12 not more, different things that can be imposed by way of

13 conditions of supervised release to assist in that.  Obviously,

14 I'd rely on his track record.  To date, he has not been

15 permitted to have devices.  I don't think he has, but the Court

16 can continue to say no devices for some period of time to prove

17 yourself, and then, Mr. Ser, you can return to court at some

18 point and modify that condition, and we will assess it at that

19 time.  That's one option.

20         A second option would be to require any electronic

21 devices to be approved by Probation, and to be -- in fact,

22 Probation installed monitoring software so that there are live

23 monitoring capabilities by Probation to see what Mr. Tassone is

24 doing on his computer at all times.  Obviously, there would be

25 periodic inspection of any peripheral computer devices by

1  Probation as well.  There is obviously a search that can occur.

2       But then the other particular aspect of the case like

3  this is the Court can order that Mr. Tassone comply with all

4  conditions of his sex offender treatment, and I know at Empire

5  Forensics they place limitations on a treatment -- a supervised

6  releasee's ability to view both adult and any pornography, not

7  just child pornography, but adult pornography as swell, and as

8  Mr. Tassone has indicated to Mr. Lau, he hasn't looked at

9  anything, adult or otherwise.

10      But the condition of Mr. Tassone following rules and

11 regulations of his treatment program would be another check, all

12 right, because I think there are polygraph examinations that are

13 done periodically where they can test whether or not there's

14 been access online to anything.  So I think there are several

15 different ways the Court can continue to enforce or monitor or

16 wholesale preclude any Internet access by any peripheral or

17 device, and we think any of those would be appropriate here and

18 leave it to the Court's discretion if that was something the

19 Court was considering.

20      MR. GHAFARY:  Your Honor, if I may, I would just add

21 that among the things that defense counsel just described, those

22 are detailed in the special conditions that Probation has

23 recommended.

24      THE COURT:  I understand that.  I saw the presentence

25 report.

1              MR. GHAFARY:  I just wanted to --

2              THE COURT:  I was hoping what defense counsel has said

3    on the record would make it much more clear.  That's all.

4              MR. GHAFARY:  And thank you, Your Honor, and I was

5    just going to voice the government's support of those special

6    conditions as swell.

7              THE COURT:  All right.  Anything else, Mr. Ser?

8              MR. SER:  No, Your Honor.

9              THE COURT:  All right.  Thank you.

10             Mr. Tassone, is there anything you would like to say

11   on your own behalf before the Court imposes a sentence upon you?

12             THE DEFENDANT:  Yes, Your Honor.  I would.  I would

13   like to apologize to all of the victims, although they can't

14   hear me.  I just feel the need -- that I need to say that.  I am

15   really ashamed and remorseful for taking part in something that

16   caused pain to these children, and for that I am deeply

17   regretful and sorry.

18             I would also like to apologize to the Court.  I am

19   sorry for being a burden on the Court and am taking full

20   responsibility for my actions, but I would like to say that if

21   any good has come from this, it's the fact that I am a different

22   person today than I was three years ago, and I will continue to

23   better myself today and every day forward.  And thank you, Your

24   Honor, and the Court.  Thank you.

25             THE COURT:  In accordance with the decision by the

1  Supreme Court in *United States versus Booker*, while the United

2  States sentencing guidelines are not mandatory, this Court

3  nonetheless must consult those guidelines and take them into

4  account when sentencing.  Therefore, this Court has considered

5  the findings of fact stated in the presentence report, as well

6  as the guidelines analysis and recommendations contained

7  therein.  The Court has weighed this information along with the

8  factors of 18 U.S.C. Section 3553(a) in coming to its final

9  sentencing decision.

10          The Court adopts the factual recitation in the

11 presentence investigation report.  The presentence investigation

12 report includes a computation that Mr. Tassone's offense level

13 amounts to 28, and his criminal history falls into Category I.

14 The guideline sentence for that offense level and criminal

15 history category listed in the presentence report is 78 to

16 97 months' imprisonment, followed by five years to life of

17 supervised release.

18          Mr. Tassone, you have been found guilty of possession

19 of child pornography.

20          The Probation Office has recommended that the Court

21 impose a sentence of 24 months' imprisonment, followed by five

22 years of supervised release.  The Probation Office recommends

23 that a fine and a JVTA assessment be waived.  Restitution is to

24 be determined.  The Probation Office noted that you must pay a

25 special assessment of $100 in accordance with 18 U.S.C.

1  Section 3013.

2          Subsection (a)(1) of 18 U.S.C. Section 3553 requires

3  that courts take into consideration the nature and the

4  circumstances of the offense and the history and characteristics

5  of the defendant.  Subsection (a)(2) of 18 U.S.C. Section 3553

6  requires that the Court consider the need for the sentence to

7  promote certain objectives of the criminal justice system,

8  namely:  Punishment, specific and general deterrence, and

9  rehabilitation.  The Court must also consider the kinds of

10  sentences available, the sentencing guidelines, pertinent policy

11  statements, the need to avoid unwarranted sentencing

12  disparities, and the need to provide restitution to victims.

13          The Court has considered the arguments made by both

14  sides and the information provided by the parties, including

15  Mr. Tassone's acceptance of responsibility for his actions, the

16  nature and circumstances of the crime, his prior criminal

17  history, his history and characteristics, and the seriousness of

18  his crime.

19          Taking into account the nature and the circumstances

20  of the offense and the history and characteristics of the

21  defendant, and considering all of the factors listed in 18

22  U.S.C. Section 3553(a), this Court finds that a sentence of five

23  years of supervised release with four months of home detention,

24  except for the defendant may leave for working, banking, and

25  necessary shopping, meaning grocery shopping and so forth, and

1   medical treatment, is sufficient, but not greater than

2   necessary, to promote the proper objectives of sentencing.

3          While on supervised release, you must abide by the

4   mandatory conditions on page 23 of the presentence investigation

5   report; the standard conditions on pages 23 and 24 of the

6   presentence investigation report; and the special conditions

7   detailed on pages 24 to 26 of the presentence investigation

8   report.

9          In addition, the defendant is ordered to pay to the

10  United States a mandatory special assessment of $100, which

11  shall be due immediately.

12         The Court notes that restitution shall not be ordered.

13  The sentence as stated is imposed.

14         Mr. Tassone, you have the right to appeal your

15  sentence.  Any notice of appeal must be filed within 14 days

16  after the entry of judgment.  So if you wish to appeal, you must

17  advise your attorney to prepare and file a notice of appeal

18  immediately.  If you are unable to pay the cost of an appeal,

19  you have the right to apply for leave to appeal *in forma*

20  *pauperis*, meaning as a poor person.  If you make such a request,

21  the Clerk of the Court must immediately prepare and file a

22  notice of appeal on your behalf.

23         Mr. Tassone, do you understand your right to appeal to

24  the extent it may exist?

25         THE DEFENDANT:  I understand, Your Honor.

1           THE COURT:  All right.

2           THE DEPUTY CLERK:  Your Honor, excuse me?

3           THE COURT:  Yes.

4           THE DEPUTY CLERK:  This is Gina.  The four months of

5   home detention, is that with electronic monitoring?

6           THE COURT:  Yes.  It's home detention with -- four

7   months of home detention with electronic monitoring except that

8   the defendant has legal -- may leave for work purposes, banking

9   purposes, any type of medical treatment, and may leave for

10  necessary shopping, meaning for banking, grocery shopping, going

11  to the pharmacy and so forth.

12          Mr. Tassone --

13          MR. SER:  Your Honor, would you -- Your Honor, I am

14  sorry to interrupt.  Just to be safe, because of the other

15  things Probation may have him doing, can we add:  And any other

16  activities approved by Probation?

17          THE COURT:  Yes.  And any other activities approved by

18  Probation.

19          I would just like Mr. Tassone to acknowledge the

20  mandatory conditions that are contained and listed on page 23 of

21  the presentence report.

22          MR. SER:  We acknowledge them, Your Honor.

23          THE COURT:  All right.  And I want him to acknowledge

24  the standard conditions detailed on pages 23 and 24 of the

25  presentence report.

1          MR. SER:  We acknowledge 1 through 12 there, Your

2   Honor.

3          THE COURT:  All right.  And also the special

4   conditions as detailed on pages 24 to 26 of the presentence

5   report.

6          MR. SER:  We acknowledge those as well, Your Honor.

7   Yes.

8          THE COURT:  All right.  So, Mr. Tassone, I believe you

9   answered this already, but I will ask you again.  Do you

10  understand your right to appeal to the extent it may exist?

11         THE DEFENDANT:  I understand, Your Honor.

12         THE COURT:  All right.  Are there any remaining counts

13  in the underlying Information that need to be dismissed or

14  addressed at this time?

15         MR. GHAFARY:  No, Your Honor.  There are not.

16         THE COURT:  All right.  Is there anything else from

17  the parties that need to be placed on the record?

18         MR. GHAFARY:  Not from the government, Your Honor.

19  Thank you.

20         MR. SER:  Not from the defense, Your Honor.

21  Actually -- no, not from the defense, Your Honor.

22         THE COURT:  All right.  Mr. Tassone, I want you to

23  know that this was a very difficult sentencing decision that I

24  made, but I want to make something very clear.  You will be on

25  supervised release for five -- for a term of five years.  You

1   must comply with every condition that is set, and that your

2   failure to comply may result in you being incarcerated for a

3   period of time, and I want to make this perfectly clear.  If you

4   fail to comply, if you come back before me because you failed to

5   comply, then I will sentence you to the maximum term allowable

6   under the law.  Do you understand this?

7           THE DEFENDANT:  Your Honor, I completely understand,

8   and I will comply a hundred percent.

9           THE COURT:  All right.  Just make sure that you follow

10  through with everything that you are supposed to comply with.

11  All right.

12          Anything further?

13          MR. SER:  Not from the defense, Your Honor.

14          MR. GHAFARY:  Not from the government.  Thank you.

15          THE COURT:  All right.  Gina, there being nothing

16  further, we can recess.

17          THE DEPUTY CLERK:  This is Gina.  Yes, Your Honor.

18  Court in recess.  Thank you, everyone.

19          (Time noted:  12:41 p.m.)

20

21

22

23

24

25